## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

CAROLYN PUROLL,
Individually and on behalf of all
Similarly Situated Employees,

          Case No.
          Hon.

  Plaintiffs,

v.

          **COLLECTIVE ACTION**
          **FAIR LABOR STANDARDS ACT**

EPOCH HOSPITALITY, LLC,

  Defendants.

---

Noah S. Hurwitz (P74063)
Colin H. Wilkin (P86243)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
colin@hurwitzlaw.com

---

### COLLECTIVE AND CLASS ACTION
### COMPLAINT AND JURY DEMAND

**NOW COMES** Plaintiff Carolyn Puroll, individually and on behalf of all similarly situated employees ("Plaintiffs"), by and through her attorneys, HURWITZ LAW PLLC, and hereby states the following for her Complaint against EPOCH HOSPITALITY, LLC ("Defendant"):

### INTRODUCTION

1.      Vibe Credit Union Showplace, previously known as The Suburban Collection Showplace, is a large exposition, conference, banquet, and event facility located in Novi, Michigan. TBON, LLC owns and leases the facility for use as an exposition, conference, and social-business venue. Defendant EPOCH Hospitality, LLC d/b/a EPOCH Catering contracts to manage and operate food and beverage services at the facility, including catering operations, event staffing, training and supervision of food-service employees, special-event staffing, administration, support, and related operational tasks. In May 2022, EPOCH entered into a Platform Service Agreement and Statement of Work with Instawork to obtain workers for services at Vibe, with an estimated commitment of 160 shifts per month. Through this arrangement, Defendant deployed a gig-economy staffing model designed to evade basic employer obligations while continuing to exercise control over workers' daily activities. Instawork operated the technology platform, AWS processed payroll and issued wages, and EPOCH directed, supervised, benefited from, and controlled the work performed at the facility. Plaintiff Carolyn Puroll worked for approximately three years performing unskilled, non-exempt, hourly labor as part of Defendant's regular business operations. She was treated like an employee in every meaningful respect: Defendant's managers set or controlled her schedule, dictated how she performed her work, supervised her on site, enforced workplace rules, verified her time, and subjected her to discipline or removal from future shifts. Plaintiff regularly

2

worked more than 40 hours per week but was not paid overtime compensation. She was denied meal and rest breaks, and when she requested a break, her manager responded by asking, "Does your pussy hurt?" before ordering her back to work. Plaintiff was also required to perform work before clocking in and after clocking out. Plaintiff therefore brings this collective action under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq., and Michigan's Improved Workforce Opportunity Wage Act ("IWOWA") to recover unpaid overtime wages and other compensation unlawfully withheld from her and all similarly situated workers.

## PARTIES AND JURISDICTION

2.     Plaintiff is an individual residing in Belleville, County of Wayne, State of Michigan.

3.     Defendant EPOCH Hospitality, LLC is a Domestic Limited Liability Company with its principal place of business in, Novi, County of Oakland, Michigan.

5.     The U.S. District Court for the Eastern District of Michigan has subject matter jurisdiction over claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over claims under the Improved Workforce Opportunity Wage Act ("IWOWA") pursuant to 28 U.S.C. § 1367.

6.     Venue is proper pursuant to 28 U.S.C. § 1391 because Defendant regularly conduct business in the Eastern District of Michigan and Plaintiff performed work in this district.

## GENERAL ALLEGATIONS

8.     Plaintiff is a worker who performed services for Defendant through a digital staffing arrangement operated by Instawork.

9.     Instawork, operates a mobile platform and phone application that connects workers to client businesses seeking temporary labor across the United States.

10.     Plaintiff utilized the Instawork phone application to access work shifts at The Suburban Collection beginning in 2022.

11.     Advantage Workforce Services, LLC ("AWS") served as the payroll processor and nominal employer of record in this arrangement.

12.     EPOCH Hospitality, LLC acted as the end-client and host employer where Plaintiff performed her work.

13.     The EPOCH-Instawork agreement required EPOCH to provide workers with a safe, suitable workplace, including safety inspections, modifications, personal protective equipment, safety equipment, and training required by law.

14.     This three-party staffing model allowed Defendant to exercise employer control while attempting to evade employer obligations.

4

15.     On April 28, 2022, Plaintiff completed onboarding documents including Form I-9, Federal W-4, Michigan MI-W4, and an AWS Offer Letter.

16.     The AWS Offer Letter explicitly stated: "You will be employed solely by AWS."

17.     The AWS Offer Letter further stated that Plaintiff's position was "non-exempt temporary employment."

18.     AWS issued Plaintiff W-2-style paystubs with federal and state tax withholdings for Federal Income Tax, Social Security Tax, Medicare Tax, and Michigan State Income Tax.

19.     AWS processed Plaintiff's payroll.

20.     Despite this W-2 treatment by AWS, Instawork characterized Plaintiff as an independent contractor under its Contractor Services Agreement.

20.     The Instawork Contractor Services Agreement stated that the parties intended to create the relationship of independently contracting parties and not that of employer and employee.

21.     Instawork planned to report Plaintiff's payments on IRS Form 1099 rather than Form W-2.

22.     This contradictory classification deprived Plaintiff of overtime pay and other employment protections.

23.     Plaintiff worked regularly for Defendant at Vibe Credit Union

5

Showplace through the Instawork platform for approximately three years.

24. Plaintiff worked approximately 156 weeks for Defendant.

25. Defendant had the ability to block Plaintiff and other workers from accessing shifts through the Instawork application.

26. Defendant exercised direct supervision and control over Plaintiff's daily work activities.

27. Defendant's managers dictated Plaintiff's work schedule and hours.

28. Defendant's managers directed how Plaintiff performed her work tasks.

29. Defendant's managers supervised Plaintiff on-site during her shifts.

30. Defendant enforced its own workplace policies and procedures that governed Plaintiff's work.

31. Defendant's managers had authority to discipline Plaintiff for performance or policy violations.

32. Instawork controlled Plaintiff's access to work opportunities through its proprietary eligibility algorithm.

33. The eligibility algorithm used data about Plaintiff's prior work, performance, and qualifications to determine which shifts she could access.

34. Instawork required Plaintiff to accept Partner Requests through the Instawork application.

35. Instawork verified Plaintiff's qualifications and conducted background

screening.

36.   Instawork had the ability to block Plaintiff from accessing shifts or clients based on performance feedback.

37.   AWS maintained employment records for Plaintiff and other workers.

38.   AWS required Plaintiff to report her hours worked through the Instawork application within 24 hours after each shift.

39.   AWS verified Plaintiff's reported time with Vibe before processing payment.

40.   AWS processed Plaintiff's wages on a weekly pay cycle running Monday through Sunday.

41.   Plaintiff performed unskilled, menial labor that required no specialized training or unique skills.

42.   The work Plaintiff performed was part of Defendant's regular business operations.

43.   Plaintiff was classified as non-exempt under the AWS Offer Letter.

44.   Plaintiff typically worked in excess of 40 hours per week for Defendants.

45.   Plaintiff was paid on an hourly basis with rates ranging from $16.00 to $31.88 per hour during her employment.

46.   Despite working overtime hours, Plaintiff was never paid at the

7

overtime rate of 1.5 times her regular rate of pay.

47. Defendant encouraged or required Plaintiff to work overtime hours when needed.

48. Plaintiff estimates she worked at least 10 hours of uncompensated overtime per week on average.

49. The AWS Offer Letter stated that Plaintiff would be provided with an unpaid meal break of not less than 30 minutes before completing five hours of work.

50. The AWS Offer Letter stated that Plaintiff would be provided with at least one 10-minute paid rest break for each four hours worked.

51. Plaintiff was never provided with meal breaks or rest breaks despite regularly working shifts in excess of five hours.

52. When Plaintiff asked her manager for a break during her shift, the manager responded by asking "Does your pussy hurt?"

53. The manager then ordered Plaintiff back to work without providing the requested break.

54. This response evidences a hostile work environment and deliberate denial of legally required breaks.

55. Plaintiff was required to perform work before clocking in to her shifts.

56. Plaintiff was required to perform work after clocking out from her shifts.

57.     Plaintiff was not compensated for work performed before clocking in or after clocking out.

58.     Defendant required Plaintiff to report all time worked via the Instawork application after completing each shift.

59.     Workers were required to report all time within 24 hours of completing a shift.

60.     Defendant verified the hours Plaintiff reported before AWS would process payment.

61.     AWS could deduct amounts from Plaintiff's pay for overreported hours if Defendant could not confirm the time worked.

62.     This timekeeping system created an incentive for Plaintiff to underreport her actual hours worked.

63.     The violations of Plaintiff's wage and hour rights were knowing and willful.

64.     Defendant deliberately structured their three-party arrangement to avoid overtime obligations.

65.     Defendant's manager explicitly denied Plaintiff legally required breaks with harassing language.

66.     Defendant systematically failed to pay Plaintiff for all hours she actually worked.

9

67. The violations experienced by Plaintiff were not unique to her employment.

69. Upon information and belief, Defendant subjected all workers placed by Instawork and AWS at Vibe to the same unlawful practices.

70. Upon information and belief, Defendant subjected workers at other client locations to similar systematic violations.

71. All workers were subject to uniform policies established by AWS and Instawork.

72. All workers received standardized payroll processing through ADP.

73. All workers completed uniform onboarding documents with identical terms.

74. All workers were subject to common control mechanisms through the Instawork platform and AWS payroll system.

75. The proposed collective action class is defined as all current or former employees who worked for Defendant through the Instawork platform at any time from three years preceding the filing of this lawsuit through the culmination of this litigation.

**COUNT I**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT OF 1938 ("FLSA")**
**ON BEHALF OF PLAINTIFF, INDIVIDUALLY, AND ON BEHALF OF**
**<u>ALL SIMILARLY SITUATED EMPLOYEES</u>**
**<u>(UNPAID OVERTIME WAGES)</u>**

76.     Plaintiff incorporates the allegations in the foregoing paragraphs.

77.     Plaintiff and all collective class members are "employees" within the meaning of 29 U.S.C. § 203.

78.     Defendant was and is an "employer" and/or "joint employer" within the meaning of 29 U.S.C. § 203 and 29 C.F.R. § 103.40.

79.     Defendant was and is engaged in interstate commerce or in an enterprise engaged in commerce within the meaning of 29 U.S.C. § 203.

80.     Defendant was required to pay overtime compensation at a rate of one and one-half times the regular rate of pay for all hours worked in excess of 40 hours per workweek pursuant to 29 U.S.C. § 207.

81.     Plaintiff and all collective class members were deprived of proper overtime compensation.

82.     Defendant's conduct in this regard was knowing and willful.

83.     Plaintiff and all other similarly situated employees were and are being deprived of earned wages in amounts to be determined at trial.

84.     Plaintiff and all collective class members are entitled to unpaid overtime wages, liquidated damages, interest, attorneys' fees and costs, and other remedies available at law or in equity.

85.     The proposed "opt in" collective action pursuant to 29 U.S.C. § 216(b) is defined as "all current or former employees who worked for EPOCH Hospitality,

11

LLC at Vibe Credit Union Showplace (previously known as The Suburban Collection Showplace) through the Instawork platform and/or Advantage Workforce Services at any time from three (3) years preceding the filing of this lawsuit through the culmination of this litigation."

86. Plaintiff reserves the right to amend said collective action definition consistent with information obtained throughout the course of discovery.

## COUNT II
## VIOLATION OF THE IMPROVED WORKFORCE OPPORTUNITY WAGE ACT ("IWOWA") ON BEHALF OF PLAINTIFF, INDIVIDUALLY, AND ON BEHALF OF ALL MICHIGAN EMPLOYEES
## (UNPAID OVERTIME WAGES)

87. Plaintiff incorporates the allegations in the foregoing paragraphs.

88. Plaintiff and all proposed class members are "employees" within the meaning of the Improved Workforce Opportunity Wage Act ("IWOWA"), MCL § 408.932.

89. Defendant was and continues to be an "employer" within the meaning of the Improved Workforce Opportunity Wage Act ("IWOWA"). *Id.*

90. IWOWA requires employers to pay overtime at one and one-half times the regular rate of pay for all hours worked in excess of 40 hours per workweek pursuant to MCL § 408.934a.

91. "An employer shall not pay any employee at a rate less than prescribed" pursuant to IWOWA. *Id.* § 408.933.

12

92.     Defendant's conduct in this regard was knowing and willful.

93.     Plaintiff and all other Michigan employees of Defendants were and are being deprived of earned wages in amounts to be determined at trial.

94.     Plaintiff and all proposed class members are entitled to compensation for unpaid overtime wages, liquidated damages in an equal amount, interest, attorneys' fees and costs, civil penalties, and any other remedies available at law or in equity.

96.     Plaintiff seeks to certify her claims under IWOWA as a class action under Fed. R. of Civ. P. 23.

97.     The proposed class is defined as "all current or former employees who worked for EPOCH Hospitality, LLC at Vibe Credit Union Showplace (previously known as The Suburban Collection Showplace) through the Instawork platform and/or Advantage Workforce Services in the State of Michigan at any time from three (3) years preceding the filing of this lawsuit through the culmination of this litigation."

98.     Plaintiff reserves the right to amend said class definition consistent with information that will be obtained through the course of discovery.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

13

a. Designation of this action as a collective action pursuant to the Fair Labor Standards Act and issuance of court-authorized notice pursuant to 29 U.S.C. § 216(b);

b. Designation of this action as a class action pursuant to Rule 23 for the Improved Workforce Opportunity Wage Act ("IWOWA") claims and prompt issuance of class notice;

c. An award of unpaid overtime wages under federal and state law;

d. An award of liquidated damages under federal and state law;

e. Compensatory damages for monetary and non-monetary losses;

f. Exemplary and punitive damages;

g. Prejudgment interest;

h. Attorneys' fees and costs under federal and state law; and

i. Such other relief as in law or equity may pertain.

Respectfully Submitted,
HURWITZ LAW PLLC

/s/ *Noah S. Hurwitz*
Noah S. Hurwitz (P74063)
Attorneys for Plaintiffs
340 Beakes St., Ste 125
Ann Arbor, MI 48104
(844) 487-9489

Dated: August 3, 2026

14

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CAROLYN PUROLL,
Individually and on behalf of all
Similarly Situated Employees,

Plaintiffs,

v.

EPOCH HOSPITALITY, LLC,

Defendants.

Case No.
Hon.

**COLLECTIVE ACTION**
**FAIR LABOR STANDARDS ACT**

---

Noah S. Hurwitz (P74063)
Colin H. Wilkin (P86243)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
colin@hurwitzlaw.com

---

## <u>DEMAND FOR TRIAL BY JURY</u>

NOW COMES Plaintiff Carolyn Ann Puroll, individually and on behalf of all

similarly situated employees, by and through her attorneys, Hurwitz Law PLLC, and

hereby demands a jury trial in the above-captioned matter for all issues so triable.

Respectfully Submitted,
HURWITZ LAW PLLC

/s/ *Noah S. Hurwitz*

15

Noah S. Hurwitz (P74063)
Attorneys for Plaintiffs
340 Beakes St., Ste 125
Ann Arbor, MI 48104
(844) 487-9489

Dated: August 3, 2026